UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

<u>**NOT FOR PUBLICATION**</u>

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>         Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>         Defendant. | No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br>         Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, <br><br>         Plaintiff, <br><br> v. <br><br> Platinum All Weather Fund Limited, and ABN AMRO Retained Nominees (IOM) Limited, f/k/a/ ABN AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited, <br><br>         Defendants. | Adv. Pro. No. 12-01697 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

<u>**A P P E A R A N C E S**</u> :

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111

By:    Regina Griffin
        David J. Sheehan
        Elizabeth McCurrach
        Stacey A. Bell
        Malissa L. Kosack
        Anat Maytal

*Attorneys for Defendant, ABN AMRO RETAINED NOMINEES (IOM) LIMITED, f/k/a ABN
AMRO Fund Services (Isle of Man) Nominees, and f/k/a Fortis (Isle of Man) Nominees Limited*
Lathan & Watkins, LLP
1271 Avenue of the Americas
New York, New York 10020
By:    Christopher R. Harris
        Thomas J. Giblin


**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, ABN AMRO Fund Services (Isle of Man)

Nominees Limited, formerly known as Fortis (Isle of Man) Nominees Limited ("Fortis Isle of

Man" or "Defendant"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee")

for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to

recover subsequent transfers allegedly consisting of BLMIS customer property.  Fortis Isle of

Man seeks dismissal for lack of personal jurisdiction.  Defendant raises the "good faith" and

"mere conduit" defenses.  For the reasons set forth herein, the motion to dismiss is denied in its

entirety.

<u>**Jurisdiction**</u>

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by the Defendant and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on June 6, 2012.  (Compl., ECF[1] No. 1).  The Trustee filed an amended complaint on November 3, 2022.  (Am. Compl., ECF No. 141).  Via the amended complaint ("Amended Complaint"), the Trustee seeks to recover $1,278,502 in subsequent transfers made to Fortis Isle of Man individually.  (*Id.* ¶¶ 4, 99).  The Amended Complaint further seeks recover of $103,541,099 made to Defendant and codefendant, Platinum All Weather Fund Limited ("Platinum")[2].  (*Id.*)

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01697-cgm.
[2] Codefendant Platinum filed its own motion to dismiss in this proceeding January 12, 2023.  (Mot., ECF No. 149).  That motion, seeking dismissal based on personal jurisdiction, failure to plead receipt of BLMIS customer property, failure to plead avoidability of the initial transfers, and the defenses of the safe harbor and good faith, has been addressed in a separate memorandum decision. (Mem. Decision, ECF No. 166)

Fortis Isle of Man was a limited company incorporated and organized under the laws of the Isle of Man. (*Id.* ¶ 58). Defendant was wholly owned as a subsidiary of Fortis Prime Fund Solutions (Isle of Man) ("Fortis Prime IOM"). (*Id.* ¶ 60). Fortis Isle of Man was one entity in the global network of Fortis financial organizations that provided banking, asset, and financial services. (*Id.* ¶ 61).

Defendant served as an administrator and acted as an agent for codefendant Platinum's investments in Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma") (collectively, the "Fairfield Funds"). (*Id.* ¶ 59). Platinum was a Cayman Islands-based hedge fund that invested exclusively in the Feeder Funds. (*Id.* ¶¶ 55–56). Platinum's marketing materials at its 2003 launch identified Defendant as its administrator, custodian, and transfer agent. (*Id.* ¶ 62).

The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry and Fairfield Sigma. (*Id.* ¶¶ 99–106). Fairfield Sentry and Fairfield Sigma are considered "feeder funds" of BLMIS because the intention of the funds was to invest in BLMIS. (*Id.* ¶¶ 2, 5). Fairfield Sigma operated as a "currency feeder" by accepting euros, converting to U.S. dollars, and then investing 100% of the money in Fairfield Sentry. (*Id.* ¶ 2).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 92). In 2011, the Trustee settled with Fairfield Sentry. (*Id.* ¶ 63). As part of their settlement, Fairfield Sentry and Fairfield Sigma consented to judgments in the amounts of $3.054 billion and $752.3 million, respectively. (Consent Js., 09-01239-cgm, ECF Nos. 109–10). Only $70 million has been paid to the BLMIS customer property estate. (Settlement Agreement, 09-01239-cgm, ECF No. 169). The Trustee then

commenced a number of adversary proceedings against subsequent transferees, like Defendant, to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Fortis Isle of Man argues that the Trustee has failed to plead personal jurisdiction. The Defendant raises the "good faith" and "mere conduit" defenses. The Trustee opposes the motion to dismiss.

The Court heard oral arguments on May 17, 2023. (*See* Tr., ECF No. 172). The parties stipulated to limiting oral arguments to the issue of mere conduit raised by Fortis Isle of Man. (Stip. and Order, ECF No. 163).

<u>Discussion</u>

**Personal Jurisdiction**

Fortis Isle of Man objects to the Trustee's assertion of personal jurisdiction. (Mem. L. ¶ 18, ECF No. 145). In the Amended Complaint, the Trustee argues that Defendant purposefully availed itself to the laws of the United States and New York. (Am. Compl. ¶¶ 68–91).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,*

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). In the absence of discovery, "a plaintiff's prima facie showing of jurisdiction 'may be established solely by allegations.'" *Paroni v. GE UK Holdings Ltd.*, 2021 U.S. Dist. LEXIS 148930 (N.D.N.Y. 2021) (quoting *Ball*, 902 F.2d at 197).

In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Defendant "knowingly accepted the rights, benefits, and privileges of conducting business in the United States and the state of New York." (Am. Compl. ¶ 68). This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation. At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (explaining that an averment of facts is necessary only after discovery). That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in

the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

<u>Minimum Contacts</u>

      In the Amended Complaint, the Trustee alleges that Fortis Isle of Man "invested in the Fairfield Funds with the specific purpose of investing with BLMIS in New York, and relinquished control over investment decisions and their implementation to Madoff in New York." (Am. Compl. ¶ 70, ECF No. 141). The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* 09-01239 Compl. ¶ 228 ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 96, of this Complaint).

      The Trustee has alleged that Fortis Isle of Man signed subscription agreements with Fairfield Sentry, in which it affirmed that it had received and read Fairfield Sentry's private placement memoranda. (Am. Compl. ¶¶ 74–75, ECF No. 141). Based on the Defendant having acknowledged reading the private placement memoranda, the Trustee has alleged that Fortis Isle of Man knew it was transacting business in New York in connection with its investments in the Fairfield Funds. (*Id.* ¶¶ 74–82). Defendant knew that Fairfield Sentry's strategy involved the purchase of United States-based securities. (*Id.* ¶ 79). Defendant knew that Fairfield Sentry and Fairfield Sigma, through its purchases of Fairfield Sentry shares, invested at least 95% of its assets with BLMIS. (Griffin Decl. Ex. 1, Fairfield Sentry Private Placement Memorandum, ECF No. 157); (*Id.* Ex. 2, Fairfield Sigma Private Placement Memorandum). Defendant knew that any returns on these investments would be earned in New York by BLMIS. (Am. Compl. ¶ 81). Defendant knew that subscription payments were to be wired in US dollars to a bank account in

New York.  (*Id.* ¶ 81).  "Aware of these facts and risks, Defendants knowingly attempted to

direct monies into the United States securities markets and undertook investment activities in the

United States." (*Id.* ¶ 82).

The Trustee also alleges that by executing the subscription agreements with Fairfield

Sentry, Defendant submitted to the jurisdiction of New York as the agreement specified that

Defendant:

> (i) 'irrevocably submit[ted] to the jurisdiction of the New York courts with
> respect to any [p]roceeding,' (ii) 'agree[d] that any suit, action, or proceeding . . .
> with respect to this Agreement and the Fund may be brought in New York,' (iii)
> 'consent[ed] to the service of process out of any New York court,' and (iv) agreed
> that '[t]his Agreement shall be governed and enforced in accordance with the laws
> of New York . . . .'

(*Id.* ¶ 76).  Though the subscription agreements do not, alone, give this Court jurisdiction

over Fortis Isle of Man, the agreements show that Defendant knew that it could face litigation in

New York courts.

The Trustee has alleged that Defendant used New York bank accounts to receive

redemption payments from and remit subscription payments to Fairfield Sentry.  (*Id.* ¶¶ 88–89).

Fortis Isle of Man used a bank account at Northern Trust International Banking Corporation to

receive subsequent transfers from the Fairfield Funds.  (*Id.*).

Where a defendant chooses to use a United States bank account to receive funds,

exercising personal jurisdiction over the defendant for causes of action relating to those transfers

is constitutional.  *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549

B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank

B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits to personal

jurisdiction in the United States when it is "free to accept or reject the proposed terms" and still

chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986

(JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012)); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

The Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction over Fortis Isle of Man. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Defendant "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

The Trustee is asserting subsequent transfer claims against Defendant for monies it received from the Fairfield Sentry and Fairfield Sigma. (Am. Compl. ¶¶ 99–105, ECF No. 141). These allegations are directly related to their investment activities with BLMIS via the Fairfield Funds. *BNP Paribas S.A.,* 594 B.R. at 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress). The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over Defendant is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendants, the forum

State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and

effective relief, the interstate judicial system's interest in obtaining the most efficient resolution

of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation.

Fortis Isle of Man actively participated in this Court's litigation for over ten years. (*See* Mot.,

ECF No. 15). It is represented by U.S. counsel and intentionally invested in the Fairfield Funds.

Defendant held bank accounts in New York and submitted to the jurisdiction of New York courts

when it signed subscription agreements with the Fairfield Funds.[3] (Am. Compl. ¶¶ 76, 88–89).

The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings

in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117

(Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440

B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R.

75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.*),

627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir.

2019) ("The United States has a compelling interest in allowing domestic estates to recover

fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And

---

[3] Even though this Court held that a defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield Sentry v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

by alleging that Defendant used a New York bank account, the Trustee has met his burden of

alleging jurisdiction over each transfer that received through that New York bank account.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy

into feeder funds that placed all or substantially all of their assets with Madoff Securities, they

knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The

Trustee has made a prima facie showing of personal jurisdiction with respect to all of the

Fairfield Funds subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts

that allow the Court to draw a "reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an

agreement does not impose a probability requirement at the pleading stage; it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations

are true and determine whether, when read together, they plausibly give rise to an entitlement of

relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it

strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very

remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Court will consider Defendant's motion regarding the recovery of nearly $105 million in subsequent transfers made to Defendant by Fairfield Sentry and Fairfield Sigma. (Am. Compl. ¶¶ 3–4, ECF No. 141).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005)).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706–07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *Id.*

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ("Fairfield Complaint"). (Am. Compl. ¶ 96). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view

since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011)

(cleaned up).

**Good Faith Defense**

Fortis Isle of Man argues that it took subsequent transfers for value, in good faith, and without knowledge of the voidability of the transfer avoided.  (Mem. L. 27, ECF No. 145).

i.    *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value."  *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548 B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005).  In addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received.  The Amended Complaint contains no mention of either Fortis Isle of Man or of codefendant Platinum exchanging shares for consideration.  (*See* Am. Compl. ¶¶ 70–91, ECF No. 126).  Therefore, the "value" defense is not asserted on the face of the Amended Complaint.

Defendant argues that it "provided value in exchange for the transfers at issue" as the transfers were redemptions of equity interest in the Fairfield Funds.  (Mem. L. at 28).  If Defendant knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds "for value" as is required under § 550.  *See Fairfield Sentry*

*Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr.

S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry Lt*d. v. Citibank, N.A. London, No. 19-CV-3911

(VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the

Knowledge Defendants that received redemption payments with the knowledge that the NAV

was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust.").  It

has not yet been determined whether Defendant knew if the shares it redeemed from the Fairfield

Funds had value.

 "Value" is Defendant's burden to plead and prove.  *Picard v. BNP Paribas S.A.* (*In re

BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Whether the Defendant gave value is a

question of fact to be resolved either at the summary judgment stage or at trial.  *Picard*, 2021

WL 3477479, at *9.

   *ii.    Good Faith*

 Where, in light of surrounding circumstances, a transferee should have known of the

debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith,

unless an investigation into the debtor's financial condition actually discloses no reason to

suspect financial trouble.  2 Bankruptcy Desk Guide § 19:105.  The District Court recently

explained that good faith is a fact-intensive inquiry that almost always requires a trial: "[t]he

Second Circuit made clear . . . that the inquiry notice standard requires a 'fact-intensive inquiry

to be determined on a case-by-case basis, which naturally takes into account the disparate

circumstances of differently-situated transferees.'"  *In re BLMIS*, No 20-cv-02586(CM), 2022

WL 1304589, at *3 (S.D.N.Y. May 2, 2022) (citing *Picard v. Citibank, N.A.* (*In re BLMIS*), 12

F.4th 171 (2d Cir. 2021), cert. denied No. 21-1059 (Feb. 28, 2022).  And that "such a fact-based

determination can only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal quotation omitted).

The burden of proving good faith falls squarely on Defendant, and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry. Discovery is required on this issue.

      *iii.*     *Knowledge of Avoidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer. *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022). Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny the Defendant's motion on this element. Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead and prove. It is a fact-intensive inquiry that requires a three-step inquiry into 1) what Fortis Isle of Man subjectively knew; 2) "whether these facts put [it] on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee[s] knew would have led a reasonable person in [its] position to conduct further inquiry into a debtor-transferor's possible fraud; and 3) whether "diligent inquiry by [Fortis Isle of Man] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

**Mere Conduit**

Fortis Isle of Man argues that the Trustee has failed to allege that it was a transferee of any subsequent transfers because it was a "mere conduit" acting on behalf of Platinum and not a subsequent transferee.  (Mem. L. 9, ECF No. 145).  Defndant argues that the "allegations here are different from those other complaints" that raise the mere conduit defense in that "[f]irst . . . the amended complaint establishes on its face that Isle of Man Nominees was not the beneficial owner of the Fairfield shares or the funds that were resulted from redeeming them and that Platinum was.  And second, the compaint explicitly alleges that Isle of Man Nominees was acting as an agent. . . ."  (Hr'g Tr. 50:23–51:7, May 17, 2023, ECF No. 172).  Defendant argues that the Amended Complaint shows that it was "merely an intermediary for its customer and its co-defendant in this case, Platinum."  (Mem. L. 9).  Platinum, according to the Defendant, was the beneficial owner of the shares and the sole entity with "dominion and control" over the money that Fortis Isle of Man received.  (*Id.* 9–10).

Section 550(a) establishes that a trustee may recover from the initial transferee of an avoided transfer or from any subsequent transferee of that initial transferee.  11 U.S.C. § 550(a).  Courts have held that interpreting transferee literally to any recipient, innocent or not, of funds may lead to inequitable results.  *See Gropper v. Unitrac, S.A.* (*In re Fabric Buys of Jericho, Inc.*), 33 B.R. 334, 337 (Bankr. S.D.N.Y. 1983); *Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Grp., LLC*, 491 F. App'x 201, 204 (2d Cir. 2012) (citing *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988)).

The so-called 'Dominion and Control Test' was established by the Seventh Circuit Court of Appeals in *Bonded* to require at minimum that a purported transferee have "dominion over the money or other asset, the right to put the money to one's own purposes."  *Bonded*, 838 F.2d at

893.  The Court of Appeals for the Second Circuit reasoned in *In re Finley* that a financial intermediary is not an "initial transferee" for purposes of § 550 when it merely possesses funds for the purpose of facilitating a transfer to another party.  *Finley v. Alexander* (*In re Finley*), 130 F.3d 52, 57 (2d Cir. 1997).

The Second Circuit's mere conduit test "frames *Bonded's* 'dominion and control' test in the negative. Rather than stating that a party is an initial transferee  if it exercises 'dominion and control' over the funds, the Second Circuit's version of the test states that a party is not an initial transferee if it was a 'mere conduit' of the funds."  *Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 14–15 (S.D.N.Y. 2007).  The mere conduit test is not a formal one.  *Id.* at 15 ("[J]ust because a party is not a 'mere conduit' in the prototypical sense of the term - i.e., a party that receives the money merely to pass it on to a third-party - does not mean that the party has requisite 'dominion and control.'").  Courts will consider both the legal rights of the Defendant with respect to the funds at issue and the reality of its control over those funds.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 634 B.R. 39, 51–52 (Bankr. S.D.N.Y. 2021), *aff'd sub nom. Sec. Inv. Prot. Corp. v. Madoff,* No. 21-CV-8678 (JPO), 2022 WL 4592898 (S.D.N.Y. Sept. 30, 2022), and aff'd, No. 21-CV-8678 (JPO), 2022 WL 7219262 (S.D.N.Y. Oct. 6, 2022); *Gredd*, 397 B.R. at 15–17 (examining the actual discretion over the funds the recipient could exert).  A defendant need not have "unfettered control" over the funds in order to be more than a mere conduit.  *Gredd* at 18 ("*Lowry* [*v. Security Pacific Business Credit, Inc. (In re Columbia Data Products, Inc.)*, 892 F.2d 26 (4th Cir. 1989)] stands for the proposition that a party can be an initial transferee even if it cannot use received funds for endeavors unrelated to the underlying transaction.")

The mere conduit defense is an affirmative defense.  *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1304 (11th Cir. 2020).  As an affirmative defense, it "must be proved by the defendant seeking its protection."  *Id.*; *see also Enron Corp. v. J.P. Morgan Sec. Inc.* (*In re Enron Corp.*), 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) (stating that the burden of proof is on the defendant asserting a mere conduit defense).  Establishing that the defendant was a mere conduit of the funds instead of a true transferee will be fact-intensive inquiry, which is best undertaken after the opposing party has "an opportunity to conduct discovery for various facts that are within the control" of the party raising the mere conduit defense.  *Enron* 361 B.R. at 45.  This Court has said as much on multiple prior occasions. S*ee, e.g., Picard v. Standard Chartered Fin. Servs. (Luxembourg) S.A.* (*In re BLMIS*), Adv. Pro. No. 12-01565 (CGM), 2023 WL 118787, at *7–8 (Bankr. S.D.N.Y. Jan. 6, 2023).

Fortis Isle of Man argues that the Amended Complaint establishes it was Platinum's agent and thus a mere conduit of the latter.  (Mem. L. 12, ECF No. 145).  Fortis Isle of Man accurately states that the Amended Complaint alleges Defendant took certain actions as an agent of Platinum.  (Hr'g Tr. 53:11–14, ECF No. 172).  These allegations do not foreclose other relevant actions that Fortis Isle of Man may have taken on its own behalf, and which may be discovered at a later stage of this proceeding.

Defendant further argues that the requests were made in the name of its clients, listing as "subscriber," "Fortis (Isle of Man) Nominess Limited re Platinum."  "In fact, the Complaint alleges in no uncertain terms that the investments and redemptions were made 'all on Platinum's behalf.'"  (Mem. L 13).  Defendant concedes that the names entered on various forms are insufficient to find that it was a mere conduit.  (Hr'g Tr. 54:10–16) ("THE COURT: So let me ask you then. So is your argument based on the defendant's name? So what relevance to

determine whether it acted as a mere conduit does the defendant's legal name have? Is that what you're saying? MR. HARRIS: That is just one of the many things in the complaint. No, the name alone is not enough, but it's supportive of what the complaint actually alleges. . . .").  Defendant further concedes that the Amended Complaint does not allege that it acted merely as a nominee of Platinum.  (*Id.* 55:1–5).

It is not beyond doubt that Fortis Isle of Man acted merely as a conduit for the funds at issue.  Discovery may reveal evidence of a defendant acting as more than a mere conduit.  *See e.g.*, *Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1 (S.D.N.Y. 2007) (broker had actual control and no legal control over transfers); *Liebersohn v. IRS* (*In re C.F. Foods, L.P.*), 265 B.R. 71, 81 (Bankr. E.D. Pa. 2001) (general partner of the debtor was transferee when while acting unlawfully, he "took control of the debtor's funds" and used them for his own benefit); *Geena v. Gottlieb* (*In re Orange Cnty. Sanitation, Inc.*), 221 B.R. 323, 327 (Bankr. S.D.N.Y. 1997) ("When a corporate officer receives a check drawn on a corporate account and uses it to pay personal debts, the corporate officer, and not the payee on the check, is the initial transferee").  This Court will not assume that Fortis Isle of Man did no more than transfer funds to Platinum.

The Trustee has alleged that Defendant was a customer of Fairfield Sentry and Fairfield Sigma.  (Am. Compl. ¶¶ 99, 103).  Fortis Isle of Man signed subscription agreements with Fairfield Sentry.  (*Id.* ¶ 59).  The Trustee has plausibly alleged that Defendant may have exercised dominion and control over the investments and redemption of BLMIS customer property.  Defendant is free plead and prove otherwise at a later stage of litigation. *See Enron Corp. v. J.P. Morgan Sec. Inc.* (*In re Enron Corp.*), 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006).

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).

/s/ Cecelia G. Morris



**Dated: June 12, 2023**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**